UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
…………………………………………………………………….………x
DESTINY G. JUDKINS

                        Plaintiff,             Civ. Action No.

    -against-

**COMPLAINT**

THE BROOKLYN HOSPITAL CENTER,
HOLLY THOMPSON, MD; SHALOM BUTEL, MD    **JURY TRIAL IS REQUESTED**

                      Defendants.

………………………………………………………………………………x

      Plaintiff, Destiny G. Judkins, by her attorney, Albert Van-Lare, Esq., complaining of the Defendants alleges the following:

## JURISDICTION AND VENUE

1. Jurisdiction lies in this Court pursuant to 28 USC § 1331.

2. Venue is proper in this court pursuant to 28 USC § 1391.

3. State law matters in this complaint are brought pursuant to this court's supplemental jurisdiction to decide state law matters.

## PARTIES

4. Plaintiff is Destiney G. Judkins a medical doctor formerly employed as a resident by Defendant, The Brooklyn Medical Center.

5. Plaintiff is female and African American.

6. Defendant, The Brooklyn Medical Center is a Brooklyn based hospital.

7. Defendant, Holly Thompson, is an Attending Physician who worked with Plaintiff during the relevant period of the complaint at The Brooklyn Medical Center.

8. Defendant Shalom Butel, is an Attending Physician who worked with Plaintiff during the relevant period of this complaint at The Brooklyn Medical Center.

1

**FACTUAL ALLEGATIONS**

9. Plaintiff became an attending physician in June 2019.

10. From June 2015 to June 2019, Plaintiff was enrolled in the emergency medicine residency program of The Brooklyn Medical Center. (TBMC)

11. When plaintiff was in the fourth and final year of her residency, on November 8, 2018 plaintiff told the chair of TMBC emergency medicine department, Dr. Sylvie de Souza that Dr. Shalom Butel, defendant , an attending physician, was harassing and bullying her . Although Dr. de Souza stated that TBMC has zero tolerance for such behavior, plaintiff subsequently experienced acts retaliation.

12. Plaintiff opposed discrimination by reporting to Defendant Hospital's management that she was a target of race and sex discrimination by Dr. Butel, and by opposing the sexual harassment of others. Specifically, plaintiff noted that Dr. Butel had previously targeted at least three other women of color : two nurses and a scribe.

13. Plaintiff has a screenshot of a November 21, 2018 text exchange between herself and Dr. Molly Williams, head of TBMC's emergency medicine residency program. In it, plaintiff notes that the day before Dr. Butel had switched into plaintiff's shift; he was her attending from 11:00 AM to 3:00 PM. Plaintiff stated that she was uncomfortable with the measures Dr. Butel took to ignore her, when she needed assistance with patients, thus affecting her performance and patient care

14. Plaintiff met with TBMC's HR Department on December 13, 2018 and submitted a letter of the same date outlying concerns about Dr. Butel and how Dr. Butel favored a certain white male doctor.

15. Plaintiff met again with TBMC HR Department on January 28, 2019. This time, union representative Lila Foldes and chair Dr. de Souza were present. Plaintiff noted that she was the

2

third woman of color to complain about Dr. Butel's actions. In response to questions from a HR representative about other unprofessional behavior by Dr. Butel plaintiff stated that she had some concerns about his sexually inappropriate behavior with female nurses and medical students.

16. Associate Director of Defendant Hospital's emergency medicine residency program Dr. Holly Thompson retaliated against plaintiff, spreading negative rumors about plaintiff and deterring potential employees for hiring plaintiff

17. In December 2018, Dr. Thompson told Plaintiff that New York Presbyterian Columbia University ( Columbia) had received plaintiff's name from a recruiter, that Dr. Thompson had unofficially spoken to a Columbia employee, and that Dr. Thompson had spoken highly of plaintiff to the Columbia employee

18. After plaintiff's involvement with Defendant Hospital's human resources investigation of Dr. Butel, Columbia told the recruiter that it would not be moving forward with plaintiff's application.  Plaintiff's opposition to discrimination caused her to lose a position following plaintiff's graduation from defendants

19. At a meeting on December 10, 2018 plaintiff noted to Dr. Thompson that she and Dr. Butel had been having some conflicts about preparing schedules. Plaintiff said she felt bullied by Dr. Butel and that he was undermining her.  Plaintiff's concerns were addressed.

20. Scheduling Chiefs in the past three years (2 males, one female) had also complained that too many people were involved in scheduling residents.

21. Similarly Dr. Butel asked out a female staff member who is now Dr. Valdez's fiancé. She turned down Dr. Butel. Dr. Valdez and his fiancé kept their relationship secret at first. While it was a secret, Dr. Butel was friendly with Dr. Valdez. Once it became known, Dr. Butel went out of his way to avoid Dr. Valdez and did something similar to plaintiff after she did not reciprocate his interest.

22. Residents must report every patient to the attending physician. If the attending physician avoids residents, this could have bad consequences for the resident and patient. For example a stroke patient came to defendants emergency room while Dr. Velez was on duty a certain medication must be given with a strict time window to reverse the effects of a stroke. Doctor Butel would not come to Dr. Valdez and his patient to approve administration of the medication. Thus doctor Valdez could get in trouble if he had given medication without approval or if he did not give medication the patient suffered irreparable damage.

23. Dr. Valdez called a nurse to be his witness and that forced Dr. Butel to answer in front of the witness that he approved the administration of the medication.

24. Dr. Thompson was close to Dr. Butel. Around August 2018, Dr. Thompson apparently wrote an email to Dr. de Souza , chair of defendants emergency medicine department . Dr. de Souza called Dr. Valdez in, and told him some of what the email said, namely that Dr.Thompson wanted to hold Dr. Valdez back from graduating. Dr. de Souza referred to the email as a rant . Dr. Valdez did not see Dr. Thompson's email

25. Defendants HR Department acknowledged that Dr. Thompson was retaliating although they did not use that word. A human resources representative referring to Dr. Thompson said something along the lines of she's got to stop that when plaintiff and Dr. Valdez complained about Dr. Thompson

## AS AND FOR A FIRST CAUSE OF ACTION

26. Paragraphs 1 thru 25 are realleged as if set forth herein verbatim and incorporated by reference.

27. Defendants violated Plaintiff's rights under Article 15 of the New York Executive Law, New York Executive Law Section 296 by engaging in unlawful discriminatory practices against Plaintiff.

28. Defendant discriminated against Plaintiff because of her race, and sex, when she was subjected to unlawful discriminatory practices. The Defendant also subjected Plaintiff to hostile work environment and retaliation in violation of Article 15 of the NY Executive Law.

29. The Defendants retaliated against plaintiff because she opposed discrimination in violation of statute cited in this cause of action.

30. The Defendant subjected Plaintiff to Retaliation and hostile work environment.

## AS AND FOR A SECOND CAUSE OF ACTION

31. Paragraphs 1 thru 30 are realleged as if set forth herein verbatim and incorporated by reference.

32. Plaintiff was damaged by Defendant's ongoing actions that denied her equal terms and conditions of employment as set forth above, in violation of section 8-107.1 of the Administrative Code of the City of New York.

33. Defendant violated Plaintiff's rights pursuant to section 8-107.1 of the Administrative Code of the City of New York when they engaged in discrimination against Plaintiff because of Plaintiff's race and sex.

34. The Defendants retaliated against plaintiff because she opposed discrimination in violation of statute cited in this cause of action.

35. Defendant also subjected Plaintiff to retaliation and hostile work environment.

## AS AND FOR A THIRD CAUSE OF ACTION

36. Paragraphs 1 thru 35 are realleged as if set forth herein verbatim and incorporated by reference.

37. Plaintiff was damaged by Defendant's ongoing actions that denied Plaintiff equal terms and conditions of employment as set forth above, in violation of Title VII of The Civil Rights Act of 1964.

38. Defendant violated Plaintiff's rights as provided for in Title VII when they discriminated against her because of her race and sex.

39. The Defendants retaliated against plaintiff because she opposed discrimination in violation of statute cited in this cause of action.

40. Defendant also subjected Plaintiff to retaliation and hostile work environment.

### AS AND FOR A FOURTH CAUSE OF ACTION

41. Defendants violated Plaintiff's rights under 42 USC Section 1981.

42. Defendant violated Plaintiff's rights as provided for in 42 USC Section 1981 when they discriminated against her because of her race .

43. The Defendants retaliated against plaintiff because she opposed discrimination in violation of statute cited in this cause of action.

44. Defendant also subjected Plaintiff to retaliation and hostile work environment

### **RELIEF**

WHEREFORE, Plaintiff demands the following relief, jointly and severally against the Defendant or as otherwise stated:

   a. A Declaratory judgment that the conduct, practices, and acts complained of herein are discriminatory and illegal.

   b. A Declaratory judgment that Plaintiff was discriminated against on the grounds of race and sex by Defendant.

   c. A Declaratory judgment that Plaintiff was discriminated/retaliated against because she opposed and complained about discrimination

   d. An order granting damages totaling the greater of $8,000.000.00 or the amount to be proven at trial.

  e. An Order by the Court taxing the costs of this action against Defendants, including Plaintiff's attorneys' fees incurred in the prosecution of this case.

  f. An Order granting punitive damages against the Defendant.

  g. Any and all further relief in law and equity deem necessary by the Court.

Dated: December 22, 2020

Respectfully submitted,

_/s/ Albert Van-Lare_
Albert Van-Lare
The Law Offices of Albert Van-Lare
125 Maiden Lane
Suite 510
New York, NY 10038
(212) 608-1400