UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

DESTINY JUDKINS,

                          Plaintiff,

                v.

THE BROOKLYN HOSPITAL CENTER and
HOLLY THOMPSON, M.D.,

                        Defendants.

**MEMORANDUM AND ORDER**
20-CV-6222 (LDH) (MMH)

---

LaSHANN DeARCY HALL, United States District Judge:

      Destiny Judkins, M.D. ("Plaintiff") brings this action against Brooklyn Hospital Center ("BHC") and Holly Thompson, M.D. (together with BHC, "Defendants"), alleging retaliation and hostile work environment based upon race and sex in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 1981, Article 15 of the New York Executive Law, and Section 8-107.1 of New York City's Administrative Code. Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety.

### BACKGROUND[1]

      Plaintiff, an African American woman, is a medical doctor who was formerly employed as a resident by BHC, a Brooklyn-based hospital, from June 2015 to June 2019. (Second Am. Compl. ("SAC") ¶ 4, ECF No. 25.) Plaintiff alleges that throughout her tenure, she was harassed and bullied by an attending physician, Dr. Shalom Butel, and subsequently experienced acts of retaliation for reporting the discrimination. (*Id.* ¶¶ 12–15, 18–33.) The complaint contains

---

[1] The following facts taken from the second amended complaint (ECF No. 23) are assumed to be true for the purpose of this memorandum and order.

several allegations along with supporting exhibits concerning Dr. Butel's harassment of others employed by BHC. (*See id.* ¶¶ 50–55, 57, 69–71, 107–08; *see also id*. at 35–36, 57–65.) As to Plaintiff, the complaint alleges the following:

- "Dr. Butel would change physicians' schedules in order to accommodate and favor his preferred residents, and female friends, . . . thereby disrupt[ing] the schedules of other physicians." (*Id.* ¶¶ 48–49.)

- "Plaintiff had resisted unwelcomed sexual advances from Butel and did not want to use the schedule mechanism . . . to satisfy [Butel's] romantic tastes and desires or any other unlawful purpose that may serve Butel[.]" (*Id.* ¶ 49.)

- "Butel targeted African American women for discriminatory treatment." (*Id.* ¶ 50.)

- On November 20, 2018, Plaintiff "was uncomfortable with the measures Dr. Butel took to ignore her[] when she needed assistance with patients[] during [her] shift, thus affecting her performance and patient care." (*Id.* ¶ 58.)

In July 2018, Plaintiff reported her concerns regarding Dr. Butel's behavior to Dr. Williams, Plaintiff's program director, and Dr. Thompson, an Assistant Program Director. (*Id.* ¶ 16.) Plaintiff also reported Dr. Butel's behavior to BHC's Chairman of the Emergency Medicine Department, as well as BHC's human resource department, in November 2018. (*Id.* ¶¶ 15, 17.) In December 2018, Dr. Thompson gave Plaintiff a "favorable evaluation for employment" upon learning that Plaintiff had applied for a position at New York Presbyterian Columbia University ("Columbia"). (*Id.* ¶ 36.)

Nevertheless, starting February 17, 2019, Plaintiff alleges that Dr. Thompson retaliated against Plaintiff in response to Plaintiff's 2018 complaints against Dr. Butel. *First*, Dr. Thompson made disparaging remarks about Plaintiff's sexual harassment complaint and Dr. Butel's termination to seven other doctors. (*Id.* ¶¶ 20–30.) These comments included: "people want to know what [Plaintiff's] problem is with him, were they dating?"; "[t]hey rallied the nurses to make stuff up I have seen pictures of the nurses out with him in skimpy outfits[]";

2

"[Plaintiff] got him fired because she said he was a racist[]"; "how can [Plaintiff] live with herself as a resident after taking an attending down like that[]"; "[Plaintiff] made this all about race"; "Plaintiff got aggressive with me during a chief meeting, interrogated me for an hour and a half, I'm uncomfortable around her[]"; "Plaintiff and her fiancé at that time were unfairly attempting to destroy [Dr.] Butel because Plaintiff filed [sic] HR complaint." (*Id.* ¶¶ 21, 25.) In a March 2019 email, Dr. Thompson also expressed displeasure with Plaintiff's complaint and participation in the HR investigation. (*Id.* ¶¶ 26–28.) *Second*, Dr. Thompson "attempted to force Plaintiff to come to work," while she was off duty, and threatened Plaintiff with an extra shift when a white doctor was late for his shift. (*Id.* ¶¶ 100–03.) *Third*, "Dr. Thompson chose to retaliate against Plaintiff by apparently disrupting her hiring process at Columbia." (*Id.* ¶ 75.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id.* While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss, *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id.* (citations omitted).

3

**DISCUSSION**

Defendant advances a number of arguments in favor of dismissing Plaintiff's Title VII and § 1981 claims, most salient of which are: (i) that Plaintiff failed to allege facts sufficient to establish that she was subjected to any severe or pervasive conduct for purposes of a hostile work environment claim; and (ii) that Plaintiff failed to sufficiently allege that she suffered an adverse employment action for purposes of a retaliation claim.[2] (Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") at 10–18, ECF No. 31.) The Court's analysis focuses upon these arguments because they are dispositive.

To plead a claim for hostile work environment based on race or sex in violation of Title VII, a plaintiff must allege facts demonstrating that "the workplace is so permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).[3] Plaintiff has failed to do so here. Plaintiff's allegations that Dr. Butel would change Plaintiff's schedule to "accommodate and favor his preferred residents, and female friends," without more, are insufficient to establish a hostile work environment because Title VII does not "prohibit people from favoring their friends, however unjust or unfair that may be." *Jones v. City of New York*, No. 14-CV-826, 2015 WL 502227, at *5 (E.D.N.Y. Feb. 5, 2015); *see also Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs P.C.*, No. 11-CV-5035, 2012 WL

---

[2] Defendants also argue for dismissal of disparate treatment Title VII and § 1981 disparate treatment claims. (Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") at 10–18, ECF No. 31.) However, the second amended complaint does not allege any disparate treatment claims under Title VII or § 1981. Therefore, the Court need not consider these arguments.

[3] The pleading standard applicable to hostile work environment claims brought pursuant to Title VII is the same as that applicable to hostile work environment claims brought pursuant to § 1981. *See Love v. Premier Utility Servs., LLC*, 186 F. Supp. 3d 248, 251 (E.D.N.Y. 2016) ("Claims of racial discrimination under § 1981 are analyzed under the same standards used for discrimination under Title VII of the Civil Rights Act of 1964[.]" (citation omitted)).

3241402, at *7–8 (E.D.N.Y. Aug. 3, 2012) ("[I]t is well-settled that favoritism of an employee based on a consensual romantic relationship . . . is not actionable under Title VII."). And, Plaintiff's allegation that Dr. Butel ignored her during a single shift cannot carry the day because it is plainly not pervasive and cannot reasonably be described as severe. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) (noting that isolated comments or incidents, unless extremely serious, are not actionable under Title VII). The closest Plaintiff comes to establishing a hostile work environment is her allegation that Dr. Butel made sexual advances toward her. (*See* SAC ¶ 49.) However, Plaintiff fails to support that allegation with any specific facts from which the Court can infer that the advances were severe or pervasive enough to have altered the conditions of her employment. *See, e.g., Holohan v. Newmark & Co. Real Estate, Inc.*, No. 18-CV-6275, 2019 WL 4743883, at *3 (S.D.N.Y. Sept. 16, 2019) (plaintiff failed to state a hostile work environment claim despite alleging two to three incidents of sexual harassment occurring over the period of several months); *McKenna v. VCS Grp. LLC*, No. 08-CV-1563, 2009 WL 3193879, at *5 (D. Conn. Sept. 30, 2009) (plaintiff failed to state a claim despite alleging "not less than fifteen (15) occasions" over course of seven months of employment on which supervisor commented on her cleavage). In sum, Plaintiff has failed to plead sufficient facts establishing that Dr. Butel's conduct toward her materially altered the terms and conditions of her employment, and so her Title VII and § 1981 hostile work environment claims must be dismissed.

Similarly, the second amended complaint is devoid of any allegations sufficient to state a claim for retaliation. To plead a retaliation claim, a plaintiff must allege employment actions that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010)

5

(citation omitted).⁴  Although, "[i]n the context of retaliation, adverse employment action is broader than it is in the context of discrimination" Title VII protects employees "only [from] retaliation that produces an injury or harm." *Shultz v. Congregation Shearith Israel N.Y.*, 867 F.3d 298, 309 (2d Cir. 2017) (quotation marks and citation omitted).  Indeed, in *Shultz*, the Second Circuit affirmed the dismissal of a retaliation claim supported by allegations of "negative comments," encouragement of other employees not to speak with the plaintiff, and a negative written announcement about the plaintiff's protected activity.  *Id.*  The Court held that "even when viewed together in the light most favorable to [plaintiff, the allegations] do not meet the standard for a materially adverse action." *Id.* at 309–10.  Plaintiff's complaint suffers the same deficiency.  Although Plaintiff alleges a number of negative comments Dr. Thompson made about her, she fails to explain how those comments were harmful or injurious.  To the contrary, Plaintiff's complaint establishes that despite Dr. Thompson's negative comments, Plaintiff graduated from her residency program and received an offer of employment from Defendant. (*See* SAC ¶ 88.)  Plaintiff's opposition fails entirely to address Defendant's arguments concerning this deficiency, apparently assuming that negative comments by themselves constitute materially adverse employment actions.  This was error because they do not. *See Bright v. Coca Cola Refreshments USA, Inc.*, No. 12-CV-234, 2014 WL 5587349, at *16 (E.D.N.Y. Nov. 3, 2014), *aff'd*, 639 F. App'x 6 (2d Cir. 2015) (being called a "rat" by supervisor and coworkers after engaging in protected activity insufficient to state retaliation claim); *Lax v. City of New York*, No. 16-CV-799, 2020 WL 6161253, at *9 (E.D.N.Y. Oct. 21, 2020) (allegation that president of company "demanded that [p]laintiff withdraw his complaint against

---

⁴ Retaliation claims brought pursuant to § 1981 are analyzed under the same standard as those brought pursuant to Title VII.  *See Fouche v. St. Charles Hosp.*, 64 F. Supp. 3d 452, 457 (E.D.N.Y. 2014) ("A section 1981 retaliation claim includes the same substantive elements as a Title VII retaliation claim[.]" (quotation marks and citation omitted)).

6

[coworker], and subsequently critiqued him for refusing to do so" is not materially adverse (citing *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 571 (2d Cir. 2011))). Moreover, while Plaintiff alleges that she was not hired by Columbia after she engaged in protected activity, and implies that Dr. Thompson is to blame, nowhere in the complaint does Plaintiff allege that Dr. Thompson disparaged Plaintiff to any person at Columbia or that Dr. Thompson otherwise compromised Plaintiff's employment prospects. Finally, Plaintiff's allegation that Dr. Thompson threatened her with an extra shift cannot save Plaintiff's retaliation claims because "[a]dditional work assignments will generally not constitute adverse actions for purposes of retaliation claim." *Kelly v. New York State Off. of Mental Health*, 200 F. Supp. 3d 378, 406 (E.D.N.Y. 2016) (no retaliation claim stated where plaintiff alleged she was assigned additional work after complaining). This is particularly so because Plaintiff's complaint establishes that she did not ultimately have to work the additional shift. That is, her allegation concerning the additional work assignment was a nonactionable unfulfilled threat. *See Spector v. Bd. of Trs. Cmty. Tech. Colls.*, 316 F. App'x 18, 20–21 (2d Cir. 2009) (affirming district court's finding that unfulfilled threats of discipline, among other actions, were insufficient to maintain retaliation claim). In short, because Plaintiff fails to allege any adverse employment action for purposes of Title VII and § 1981, those claims are dismissed.

      Having dismissed Plaintiff's federal claims, the Court must consider whether to retain jurisdiction over Plaintiff's state law claims. "Although the dismissal of state law claims is not required when the federal claims in an action are dismissed, a federal court may decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3)." *Reid ex rel. Roz B. v. Freeport Pub. Sch. Dist.*, 89 F. Supp. 3d 450, 459 (E.D.N.Y. 2015) (quoting *Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 237 (E.D.N.Y.

7

2015)). The Court must "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over pendent state law claims." *Id.* at 461 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). "Once all federal claims have been dismissed, the balance of factors will 'usual[ly]' point toward a declination" of supplemental jurisdiction. *Lundy v. Catholic Health Sys. Long Island*, 711 F.3d 106, 118 (2d Cir. 2013). Having considered judicial economy, convenience, fairness, and comity, the Court declines to exercise supplemental jurisdiction.[5]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the second amended complaint is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
       March 27, 2023

/s/ LDH
LASHANN DEARCY HALL
United States District Judge

---

[5] Defendants move to strike allegations concerning employees other than Plaintiff. (Defs.' Mem. at 20–22.) That motion is denied as moot in light of the Court's dismissal of the second amended complaint in its entirety.